**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CARL B. SMITH, :<br>:<br>        Petitioner, :<br>:<br>    v. :<br>:<br>JEFF GRONDOLSKY, WARDEN, :<br>:<br>        Respondent. :<br>: | Civil No.: 09-276 (NLH)<br><br>**O P I N I O N** |

**APPEARANCES:**

    CARL B. SMITH, Petitioner Pro Se
    #44233-066
    F.C.I. Fort Dix
    P.O. Box 2000
    Fort Dix, NJ 08640

    PAUL A. BLAINE, AUSA
    OFFICE OF THE U.S. ATTORNEY
    401 Market Street, Fourth Floor
    Camden, New Jersey 08101
    Counsel for Respondent

**HILLMAN**, District Judge

    Petitioner, Carl B. Smith ("Smith"), filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in which he challenges a prison custody classification or management variable designation. Smith contends that the "Greater Security management variable" as applied to him violates federal law and regulations, as well as his constitutionally protected liberty interest. The named respondent is FCI Fort Dix Warden Jeff

Grondolsky. Respondent Grondolsky answered the petition on June 2, 2009, and provided a copy of the pertinent administrative record. (Docket Entry No. 4). On August 5, 2009, Smith filed a traverse or objections to the Warden's answer. (Docket Entry No. 6).

## I.  BACKGROUND

On January 30, 1992, Smith was convicted in the United States District Court for the Eastern District of Pennsylvania, on drug possession and drug trafficking related offenses. He was sentenced to 27 years in prison, and his projected release date is November 11, 2014. (See Respondent's Exhibit 1, attached to the Declaration of Tara Moran ("Moran Decl.") at pp. 4-5, 7).

Respondent states that Smith's Presentence Investigation Report ("PSIR"), prepared in connection with Smith's sentencing on his 1992 conviction, shows that Smith was earlier convicted in the State of New York on an attempted murder charge. During the commission of the earlier offense, Smith and three other men robbed passengers on a train. When police responded to the scene, Smith ran and refused to stop. With a handgun, Smith fired four shots at the police officer in his effort to escape. When other police officers arrived, a gunfight ensued between

Smith and the police.  Smith eventually was apprehended by the police.  (Moran Decl., at Exs. 5-8).[1]

As a result of the earlier conviction, on March 30, 2005, the Bureau of Prisons ("BOP") applied a management variable of Greater Security, as requested by Smith's Unit Team at FCI Fort Dix, to maintain Smith's designation to FCI Fort Dix, which is a Low Security institution.  Smith's annual custody classification score in March 2005 indicated that Smith should be reduced to a Minimum Security level inmate status.  (See Declaration of Jennifer Knox, at ¶¶ 6-7).  However, the Unit Team determined that, based on the prior conviction for attempted murder, Smith's appropriate security level was greater than that capable of being managed by staff at a minimum security facility, such as the Federal Prison Camp at Fort Dix.  See BOP Program Statement ("P.S.") 5100.08, Ch. 5.  (See also Moran Decl., at Ex 5).  Respondent confirms that the Greater Security management variable has been applied each year thereafter, in conformity with P.S. 5100.08, so as to ensure that Smith remains at an appropriate security level institution for safety and security purposes.  (See Moran Decl., Exs. 6-8).

---

[1] Respondent did not provide a copy of the PSIR, but noted that Smith could request to review same, if he wished.  As a general rule, PSIRs are not provided as exhibits because they contain sensitive and confidential information that should not be placed on the public docket.

Respondents confirm that Smith has exhausted the requisite administrative remedies before bringing this habeas action. (Moran Decl., ¶¶ 3-4, Exs. 2-4).

Smith contends that the four management variables imposed since 2005, were applied in violation of P.S. 5100.08, because only three (3) management variables may be placed on an inmate. He further asserts that the management variable was applied due to personal prejudice and racial discrimination by the staff at FCI Fort Dix.  Smith takes issue with the BOP's argument that only one management variable has been applied on four separate occasions.

Smith also argues that application of the management variable because of his 1981 conviction disregards his "crystal clear conduct" he has maintained since 2001 in prison, as well as his participation in educational and rehabilitation programs.  He further asserts that it violates "Amendment 494 (2002)" which prevents use of any crime over ten years old.

Finally, Smith contends that the BOP has denied camp placement because he has too much time remaining on his sentence. Smith argues that the BOP Program Statement 5100.08 states, in pertinent part, that "[i]f there is 120 months or less remaining to be served, prisoner may be placed in minimum security institution."  At the time he filed his petition, Smith has 61 months remaining on his sentence.

4

II.   DISCUSSION

A.   Standard of Review

Smith seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).[2]  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

---

[2] United States Code Title 28, Section 2241, provides in pertinent part:

> (a) Writs of habeas corpus may be granted by the district courts within their respective jurisdictions
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless-   (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

B.  <u>Jurisdiction</u>

The Court of Appeals for the Third Circuit addressed the scope of § 2241 jurisdiction in <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235 (3d Cir. 2005), in which a federal prisoner sought to use § 2241 to challenge BOP regulations governing pre-release transfer to Community Corrections Centers.  There, the Court of Appeals began its analysis by reiterating its prior holdings that § 2241 is an appropriate vehicle for a federal prisoner to challenge the "execution" of his sentence, acknowledging, however, that "the precise meaning of 'execution of the sentence' is hazy."  432 F.3d at 241-42.

In attempting to decipher the meaning of "execution of the sentence," the <u>Woodall</u> Court found cases decided in the wake of <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973), lacking in guidance, as their "'central concern ... has been with how far the general remedy provided by [a civil action] may go before it intrudes into the more specific realm of habeas, not the other way around.'"  <u>Woodall</u>, 432 F.3d at 242, n. 5 (quoting <u>Docken v. Chase</u>, 393 F.3d 1024, 1028 (9th Cir. 2004)).  Instead, the Court was persuaded by the reasoning of several Courts of Appeals that have interpreted § 2241 as encompassing a range of challenges to the manner of imprisonment.  432 F.3d at 242-44.  For example, the Court cited with approval <u>Jiminian v. Nash</u>, 245 F.3d 144, 147 (2d Cir. 2001)("A motion pursuant to § 2241 generally challenges

6

the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions."). See also Marti v. Nash, 227 Fed. Appx. 148 (3d Cir. 2007). But see Ganim v. Federal Bureau of Prisons, 235 Fed. Appx. 882, 884 (3d Cir. 2007)(unpublished)(holding that Ganim's challenge to the BOP's failure to transfer him from FCI Fort Dix to the Federal Correctional Camp at Otisville, New York, at the same security level, was not cognizable under § 2241 and that this Court erred by failing to dismiss Ganim's § 2241 petition for lack of jurisdiction).

Based on the reasoning of Woodall and its list of the types of issues found justiciable under § 2241, this Court finds it can properly exercise jurisdiction over this habeas petition challenging Petitioner's security classification.

C.  Applicable Regulations

At issue in this petition is the application of a Greater Security management variable.  The Federal Bureau of Prisons ("BOP") institutions are classified into five security levels: Minimum, Low, Medium, High, and Administrative, based on the level of security the facility is able to provide.  The BOP designates an inmate to a particular facility based on the level of security and supervision the inmate requires, the level of

7

security and supervision the facility can provide, and the inmate's program needs.  See BOP Program Statement ("P.S.") 5100.08, Inmate Security Designation and Custody Classification Manual, Ch. 1, p. 1.

The BOP applies "management variables" to inmates when it is determined that increased security measures are needed to insure the protection of society.  P.S. 5100.08, Ch. 5.  Management variables are used by the BOP to ensure that an inmate is designated to the most appropriate security level facility.  Id.  Currently, the Administrator of the BOP's Designation and Sentence Computation Center ("DSCC") must approve the exercise of all management variables.[3]  A "Greater Security" management variable, as applied in this case, is used when the BOP determines that an inmate represents a greater security risk than the assigned security level scoring otherwise reflects.  P.S. 5100.08, Ch. 5, p.5.

D.  The Petition Lacks Merit

Smith challenges the repeated application of the Greater Security management variable because it prevents him from being considered for assignment or transfer to a camp facility.  He asserts that the management variable is being applied in a racially discriminatory manner based on a 1981 conviction.  Smith

---

[3] Before the DSCC was established, all management variables were approved by the Regional Director.

also contends that the management variable has been applied on more than the permissible three occasions allowed under P.S. 5100.08.

In general, an inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification, so long as the conditions or degree of the inmate's confinement falls within the sentence imposed upon him and does not otherwise violate the U.S. Constitution.  See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976)(noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process"); Wesson v. Atlantic County Jail Facility, 2008 WL 5062028, *6 (D.N.J. Nov. 26, 2008)(it is well established that an inmate has no liberty interest in a particular custody level or place of confinement). See also Sandin v. Connor, 515 U.S. 472, 484-86 (1995)(holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment"); Kentucky Dept. of

Corrections v. Thompson, 490 U.S. 454, 463 (1989)(holding that a liberty interest arises only where a statute or regulation uses "explicitly mandatory language" that instructs the decision-maker to reach a specific result if certain criteria are met). See also Marti v. Nash, 227 Fed. Appx. 148, 150 (3d Cir. 2007)(inmate has no due process right to any particular security classification and, therefore, could not challenge his public safety factor of "greatest severity", which prevented his placement in a minimum security facility); Day v. Nash, 191 Fed. Appx. 137, 139-40 (3d Cir. 2006)(upholding application of a public safety factor to inmate's custody classification which prevented inmate's placement in a minimum security camp).

In this case, the BOP has reviewed Smith's case in the administrative remedy process and has determined that Smith's security designation and custody classification is proper. (See Moran Decl., at Exs. 5-8; Petitioner's Reply (docket entry no. 6) at pp. 9-10). Specifically, the BOP found no evidence of racial discrimination in the application of the management variable, as baldly alleged by Smith. The BOP's determination, made in the exercise of the BOP's congressionally-delegated discretion, is entitled to a deferential standard of review by this Court.

Moreover, the petition does not allege facts indicating that Smith's constitutional rights have been violated in any way. At best, Smith argues that a management variable may not be used

10

more than three times. However, the BOP responded that only one management variable was applied in 2005, with respect to Smith's 1981 conviction, and that this management variable was properly renewed three times in each successive year, from 2006 to 2008. Smith does not show how this application violates BOP regulations or federal statutory and constitutional law. His reference to P.S. 5100.08 is unavailing to his claim. In fact, as respondent points out, P.S. 5100.08 limits only the number of management variables applied at any one time to three. See P.S. 5100.08, Chap. 5, p. 1.

Consequently, Smith has failed to show that the BOP's application of a Greater Security management variable was wrongly applied, or was otherwise unconstitutional or violative of his right to due process. Moreover, it is clear that Smith's requested relief concerning the management variable applied to his classification only affects the security level of the institution in which Smith can be placed as it precludes camp placement. It does not affect Smith's eligibility for a Community Corrections Center or any other program in which he might otherwise be eligible for a reduction in his sentence; nor does his security classification affect the length of Smith's sentence. (Respondent's Answer, docket entry no. 4, at p. 10-11). Accordingly, since no liberty interest is affected by

11

Smith's classification, his habeas petition must be denied on the merits.

## **CONCLUSION**

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit. An appropriate Order accompanies this Opinion.

/s/ NOEL L. HILLMAN
NOEL L. HILLMAN
United States District Judge

At Camden, New Jersey
Dated: March 9, 2010